OAO91 (Rev. 12/03)  Criminal Complaint

# UNITED STATES DISTRICT COURT

DISTRICT OF                MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br><br>Benjamin Haskell<br>Michael Jacques<br>Thomas Gleason Jr. | **CRIMINAL COMPLAINT**<br><br>Case Number: |

(Name and Address of Defendant)

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about _November 5, 2008_ in _____Hampden_____ County, in
(Date)
the _____ District of _____Massachusetts_____ defendant(s) did,

(Track Statutory Language of Offense)
willfully and knowingly combined, conspired, confederated, and agreed with one another to injure, oppress, threaten, and intimidate parishioners of the Macedonia Church of God in Christ, a predominantly African-American congregational church led by an African-American pastor, in the free exercise or enjoyment of a right secured to them by the Constitution and laws of the United States, that is, the right to hold real and personal property in the same manner as that right is enjoyed by all citizens.

in violation of Title ___18___ United States Code, Section(s) _____241_____ .

I further state that I am a(n) ___FBI Special Agent___ and that this complaint is based on the
Official Title
following facts:

See attached Affidavit.

Continued on the attached sheet and made a part of this complaint: ☒ Yes  ☐ No

_M.D. SYG_
Signature of Complainant

Ian Smythe
Printed Name of Complainant

Sworn to before me and signed in my presence,

1/16/2009                                                                    at    Springfield                    MA
Date                                                                                       City                              State

Kenneth P. Neiman            Chief U.S.M.J.
Name of Judge                    Title of Judge                              Signature of Judge

AFFIDAVIT

I, Ian D. Smythe, state as follows:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been employed by the FBI for five years with the Salt Lake City and Boston Divisions. Since October 2006 I have been assigned to the Boston Division's Springfield Resident Agency, where I am assigned to investigate civil rights and health care fraud matters. I have received extensive training in managing and investigating complex white collar, financial crimes, health care fraud, and civil rights investigations, to include hate crimes, color of law, human slavery, and F.A.C.E. Act violations. Prior to my employment with the FBI, I served for 12 years as a Human Intelligence Officer for the United States Army.

2. Since being employed by the FBI I have conducted multiple investigations of potential civil rights violations in the areas of hate crimes and color of law. I have planned, coordinated, and executed numerous arrests, surveillances, electronic monitoring, warrants, seizures, and forfeitures. I have drafted and sworn to numerous affidavits in support of search warrants, pen registers, mail covers, and Title III monitoring.

3. The information described herein is based upon my belief, knowledge and information, and the knowledge and information of other agents, investigators and police officers involved in this investigation. This affidavit is not exhaustive, but rather contains the information necessary to satisfy and establish probable cause that BENJAMIN HASKELL, MICHAEL JACQUES, and THOMAS GLEASON, did willfully and knowingly combine, conspire, confederate, and agree with one another to injure, oppress, threaten, and intimidate parishioners of the Macedonia Church of God in Christ, a predominantly African-American congregational church led by an African-American pastor, in the free exercise or enjoyment of a right secured to them by the Constitution and laws of the United States, that is, the right to hold real and personal property in the same manner as that right is enjoyed by all citizens, in violation of 18 U.S.C. § 241.

4. I am personally involved in the investigation of the offense referred to above, and am familiar with all aspects of this investigation. In addition to my personal knowledge, the statements contained in this investigation are based in part on information provided by agents of the FBI, ATF, Massachusetts State Police (MSP), and Springfield Police Department (SPD);

reviews of telephone toll records; Court authorized pen register
data; consensually monitored conversations with undercover
officers (UCO) and cooperating witnesses (CW); observations
obtained from surveillance agents; and my training and experience
as an FBI agent. Because this affidavit is being submitted for
the limited purpose of establishing probable cause, I have not
included each and every fact known to me concerning this
investigation.  Rather, I have set forth only the facts that I
believe are necessary to establish the necessary foundation for
the arrest of the above individuals for the violations listed.

Summary of Investigation

### The Fire

5. On Wednesday November 5, 2008 at approximately 3:00am,
the Springfield Fire Department responded to a reported structure
fire on Fox Woods Drive in the Sixteen Acres neighborhood of
Springfield, Massachusetts.  Upon arrival on the scene,
firefighters observed a building fire at 215 Tinkham Road, which
corresponded to the address for the Macedonia Church of God in
Christ's (COGIC) new building, which was 75% complete at the time
of the fire.  Firefighters encountered heavy fire emanating from
the rear, side and center roof section of the building.  The fire
eventually destroyed the entire structure leaving only the metal
superstructure and a small portion of the front corner intact.
Three firefighters sustained minor injuries at the scene; two
firefighters with moderate injuries were treated and released at
local hospitals, resulting in the loss of duty time.

### The Arson Determination

6. State and local fire and arson investigators secured the
scene while the fire department extinguished the fire. Based on
the fact that the Macedonia COGIC church was a predominantly
African-American congregation, and the fire's breaking out within
hours of Barack Obama being elected President of the United
States, the decision was made by a joint state/local command team
to request the assistance of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives' (ATF) National Response Team (NRT) for
the cause and origin investigation. Local investigators secured
the interior of the building, but due to impending inclement
weather, the state/local investigators decided to examine the
exterior of the building and curtilage using accelerant detection
K-9 dogs from Springfield Fire Department (SFD) and the

2

Massachusetts State Police (MSP).  Both K-9's returned positive
hits at over 20 locations along the building's rear wall.
Investigators submitted soil samples to the MSP state forensics
lab, which all subsequently returned positive for gasoline.

7. The ATF's NRT arrived and assumed control of the scene
the morning of Thursday, November 6, 2008, to conduct a joint
cause and origin investigation, which concluded on Saturday,
November 8, 2008.  The conclusion of the NRT investigators, after
eliminating all potential accidental causes, was that the fire
was incendiary in nature, caused by the use of a competent
ignition source igniting an unknown quantity of gasoline applied
to the building.

The Investigation

8. On or about November 9, 2008, Springfield Police
detectives made contact with FBI Cooperating Witness A, who
advised that on or about Friday, November 7, 2008, he was riding
in HASKELL's car with HASKELL and JACQUES. Witness A advised that
HASKELL and JACQUES drove him to the remains of the Macedonia
Church of God in Christ, where they stopped and observed the
scene for a few minutes before driving away.  Witness A further
advised that when they departed the scene, HASKELL and JACQUES
laughed to each other.  At some point while driving, JACQUES
asked for whom Witness A had voted in the presidential election.
When Witness A stated he had voted for Barack Obama, JACQUES
replied "fucking niggers", further suggesting he thought Obama
would be assassinated.  When HASKELL dropped Witness A at his
residence, HASKELL turned to Witness A and stated, "We did it."
Witness A subsequently told investigators that when he asked
HASKELL why they had burned the church, HASKELL responded,
"Because it was a black church."

9. On or about November 10, 2008, HASKELL and JACQUES again
picked up Witness A and drove him to work. During the trip,
Witness A again engaged HASKELL and JACQUES concerning the fire.
Witness A asked if it really took them 15 gallons to start the
fire.  JACQUES replied, in substance, that it was more like five
gallons, and that they had poured the gasoline around the back
corner of the building, further noting that lighting the vinyl
siding ensured the building "went up quickly."

10. On or about November 12, 2008, Witness A met with HASKELL, without JACQUES present.  At this meeting, HASKELL denied telling Witness A he had started the fire, stating only that he knew who started the fire.

14. Subsequent to November 12, 2008, an undercover officer (UCO) from the Massachusetts State Police (MSP) was introduced to HASKELL.  On January 8, 2009, UCO proposed that HASKELL do a "job" for the UCO to settle a debt from a prior drug transaction between the two.  HASKELL stated that he would be "down" with anything the UCO proposed.

15. On January 12, 2009, the UCO again met with HASKELL, where UCO advised HASKELL that his family had a house in Springfield that they couldn't pay for or sell, and that he wanted it "torched" for the insurance money.  The UCO offered to forgive HASKELL's drug debt of $1,500, plus an additional sum.  HASKELL agreed to burn the house for the UCO.  During the course of the conversation, HASKELL admitted to setting a house fire in his neighborhood previously, and told the UCO that he had a $10,000 reward on his head.  I know that, in fact, the announced reward for the church arson was $10,000.

16. On January 14, 2009, the UCO again met with HASKELL, ostensibly to show him the house site the UCO wanted burned.  En route to the location, HASKELL showed the UCO the house in his neighborhood he had claimed to burn.  This location was subsequently identified as a known prior unsolved fire by Springfield arson investigators.  HASKELL and the UCO surveilled the location of the "job," then the UCO advised HASKELL he potentially had a bigger job in Holyoke.  HASKELL agreed to discuss the additional "job," and the UCO took HASKELL to Holyoke, where they surveilled a large, vacant tenement building.  In discussing his ability to handle a larger "job,"  HASKELL admitted to the UCO that he had started the church fire, along with JACQUES, whom HASKELL described as his "right-hand man" for setting fires.  HASKELL further stated that he and JACQUES had committed six arsons "between them."

17. On that same night, HASKELL was taken into custody by MSP troopers for a local default warrant and was transported to an MSP location for processing.  After being advised of and waiving his Miranda Rights, HASKELL was questioned about the church arson by investigators.  He subsequently admitted to participating in the church arson as well as the prior house

4

fire.  HASKELL advised that on November 3, JACQUES stated he was
angry that the country was going to have an African-American
president, and that the "blacks and Puerto Ricans" would now have
more rights than whites.  HASKELL advised that, on election
night, November 4th, he, JACQUES, THOMAS GLEASON, and SCOTT [LNU]
took two five-gallon gasoline cans from GLEASON's garage, and
walked through the woods to the rear of the church where JACQUES,
GLEASON, and SCOTT [LNU] gained access to the interior of the
building via a side window, where they poured gasoline in the
interior.  HASKELL further stated that they poured the remaining
gasoline along the external rear wall as they left the area, once
the fire started.

18. On January 15, 2009, the MSP UCO met with JACQUES,
ostensibly to show JACQUES the large Holyoke "burn" site for his
input if he and HASKELL could handle the job. In the course of
the meeting, the UCO questioned JACQUES concerning the Holyoke
"job," and comparing it to the church arson.  JACQUES made
positive statements to the UCO confirming his participation in
the church arson.  The UCO subsequently asked JACQUES how much
the "job" would cost, to which JACQUES replied $2,000-$3,000.

19. On that same night, JACQUES was taken into custody by
MSP troopers for a local default warrant and was transported to
an MSP location for processing.  After being advised of and
waiving his Miranda Rights, JACQUES was questioned about the
church arson by investigators.  After initially denying being
involved, JACQUES admitted to participating in the church arson
as well as the prior house fire with HASKELL.  JACQUES told
investigators that on November 4, 2008, he and HASKELL drove to
GLEASON'S house, where they met GLEASON and an unknown male
friend of GLEASON'S.  JACQUES stated in substance that GLEASON
and HASKELL were angry about the election of Barack Obama, and
wanted to burn the church, so they took gasoline from GLEASON's
house, and the four went through the woods, to the rear of the
church, where GLEASON, HASKELL, and the unknown male gained entry
to the interior through a side window while JACQUES remained
outside.  The three poured gasoline throughout the interior
before lighting the fire.  They then left the site and returned
to GLEASON'S house.

20. In the early morning of November 16, HASKELL and the MSP
UCO met with GLEASON.  HASKELL and the UCO discussed the plan to
burn the Holyoke site with GLEASON, who made positive statements
to the UCO confirming his participation in the church arson.

21. That same day, GLEASON was transported to a MSP location, where he agreed to speak to investigators. After being advised of and waiving his Miranda Rights, GLEASON was questioned concerning the church arson. After initially denying being involved, GLEASON subsequently admitted to participating in the church arson with HASKELL and JACQUES, though GLEASON denied the presence of a fourth individual. GLEASON stated that when HASKELL and JACQUES came to his house the evening of November 4, 2008, they were angry about the election of Barack Obama and discussed burning the black church with GLEASON. GLEASON claimed that he thought it was a stupid idea, but went along anyway. GLEASON further stated that the three took cans of gasoline through the woods behind his house to the rear of the church building, where HASKELL and JACQUES gained entry to the interior by a side window. HASKELL and JACQUES then poured gasoline both inside and outside of the structure before setting the fire. GLEASON denied having set any fires.

## Conclusion

22. Based on the foregoing, there is probable cause to believe defendants BENJAMIN HASKELL, MICHAEL JACQUES, and THOMAS GLEASON willfully and knowingly combined, conspired, confederated, and agreed with one another to injure, oppress, threaten, and intimidate parishioners of the Macedonia Church of God in Christ, a predominantly African-American congregational church led by an African-American pastor, in the free exercise or enjoyment of a right secured to them by the Constitution and laws of the United States, that is, the right to hold real and personal property in the same manner as that right is enjoyed by all citizens, in violation of 18 U.S.C. § 241.

Ian D. Smythe
Special Agent
Federal Bureau of Investigation

Sworn to under the pains and penalties of perjury,
before me this 16th day of January, 2009.

Kenneth P. Neiman, USMJ

6